# SUPREME COURT

OF

# PENNSYLVANIA.

### Eastern District. December Term, 1810.

1810.

SMITH *against* BROWN.

*Philadelphia,*
*Thursday,*
December 20.

RULE to shew cause why the defendant should not be discharged on common bail.

Upon the return of the rule, *Wallace* for the plaintiff produced a positive affidavit of debt upon a bill of exchange drawn by the defendant at *New Orleans*, where he resided, upon his correspondent in *Philadelphia*, in favour of the plaintiff who was a resident of *Pittsburg*.

The defendant relied upon a discharge from his debts since the date of the bill, under a law of the territory of *New Orleans*, in the nature of a bankrupt law.

*Chauncey* for the defendant contended, that according to the uniform practice of *Pennsylvania* since the case of *Millar* v. *Hall*, (a) he was intitled to have the rule made absolute. The reasoning of the court in that case went much further than it was necessary to go here; but limiting that decision, as perhaps it ought to be, by the facts, it would still fit the present case in every particular; for the debtor, in both cases, was discharged by the bankrupt law of the place where the debt was contracted, and where he resided. That rule

*If a debtor is discharged from a debt by the law of the state or territory where it was contracted, and the creditor resides in Pennsylvania and arrests him here, the rule is to discharge him on common bail, if the state where the debt was discharged, extends the same courtesy to citizens of Pennsylvania; and it will be presumed that it does, until some reason is shewn to the contrary.*

(a) 1 *Dall.* 228.

2 C

had been followed by this court, in *Thomson* v. *Young,* (*a*) and in *Donaldson* v. *Chambers;* (*b*) and in the state of *New York*, whose courts seemed much disposed to limit the operation of a territorial discharge, the decisions neverthreless recognised the efficacy of a discharge under such circumstances as the present. *Vanraugh* v. *Vanarsdaln,* (*c*) *Smith* v. *Smith.* (*d*) It had in fact been treated as one of the federal obligations of the states, to give effect to such discharges, and to screen the bankrupt debtor behind them.

*Wallace* for the plaintiff, answered, that the principles asserted in *Millar* v. *Hall* were so repugnant to the decisions in *England* and in other of the *United States*, and they had been impeached so directly in some subsequent cases, that the court ought to put the party to his plea, and not decide so important a point in this summary way. It had been so done by the Circuit Court of the *United States* in *Knox* v. *Greenleaf,* (*e*) and it was the regular course, unless the ground of discharge was too plain for a question. In *Millar* v. *Hall* the court conceived themselves bound to decide as they did, by the law of nations, and the reciprocal obligations of the states. They go upon no other ground. But the law of nations does not authorize one country to bind by its laws both persons and property situated in another; and it is a principle of law that the debt follows the person of the creditor; so that in *Millar* v. *Hall* the law of nations looked quite another way. As to the obligations of the states, the constitution requires no more than that they shall acknowledge *extra territorium* the authority of legislative acts, over such persons and things as were within their legitimate control; and it is merely begging the question to say that they bind a creditor residing in another state. The authority of that case was directly impugned in *Greenough* v. *Emory;* (*f*) and even, if it must be considered as law in *Pennsylvania*, it cannot affect this case, because *New Orleans* is not a state, and cannot claim that deference to the laws, which it is said the constitution secures to those of the states. If reciprocal obligation is the ground of the motion to the court, it should

(*a*) 1 *Dall.* 294.     (*c*) 3 *Caines* 154.     (*e*) *Wallace's Rep.* 108.
(*b*) 2 *Dall.* 100.     (*d*) 2 *Johns.* 235.     (*f*) 3 *Dall.* 369.

appear, which it does not, that *New Orleans* acknowledges and respects this obligation.

*Rawle* in reply, said that it was only necessary to bring this case within *Millar* v. *Hall*, as his colleague had done; for that adjudication had been so implicitly followed in the state courts of *Pennsylvania*, that it could not now be disturbed, without weakening the authority of judicial precedents in every case. Its effect could not be evaded, except by shewing a distinction between that case and the present, which he thought had not been done; for by the treaty of cession, of the 30th *April* 1803, the *United States* stipulated that the inhabitants of *Louisiana* should be admitted into the union as soon as possible, according to the principles of the federal constitution; and the act of 26th *March* 1804, for erecting the ceded country into the territory of *Orleans*, and the district of *Louisiana*, authorized the former to pass all laws not repugnant to the constitution and laws of the *United States*. 7 *U. S. Laws* 113. So that this territory must be considered as intitled, even in its inchoate connexion with the *United States*, to take the constitution as the measure of its rights and of the respect to be paid to its laws. As to reciprocity, the court will presume reciprocity, unless the contrary appears. We have no positive information on that head.

TILGHMAN C. J. The rule of this court has been, since the case of *Millar* v. *Hall*, to discharge on common bail, unless the state, under which the discharge was given, refuses to extend the same courtesy to the citizens of this state. But I think it fair to presume, unless some reason is shewn to the contrary, that such courtesy is extended; and such has been the course hitherto pursued by the court, where discharges have been pleaded under the laws of our sister states.

PER CURIAM.

Rule absolute.